**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. ) <br> MYRON SPRAGGINS, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> ROGER ZIMMERMAN, ) <br> ) <br> Respondent. ) | ) No. 06 C 6700 <br> ) Wayne R. Andersen <br> ) District Judge |

## MEMORANDUM OPINION AND ORDER

This case is before the court on Myron Spraggins' petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the habeas petition is denied.

### BACKGROUND

On February 1, 1993, a jury in the Circuit Court of Cook County found petitioner Myron Spraggins guilty of first degree murder. At trial, the prosecution alleged that Spraggins and another man killed Kevin Jones, a rival gang member. The victim, Kevin Jones, was killed on March 23, 1991 on the fourth floor of a Chicago Housing Authority building located at 5041 South Federal Street. The evidence revealed that Jones was shot numerous times and that two different weapons were used in the attack.

*A.    Trial Testimony*

At trial, the State presented eyewitness testimony from Eugenia Pryor, Priest Pryor and Kenneth Hunter. Each testified that he or she was with a group of friends outside an apartment on the fourth floor of the 5041 building and that Jones ran into an open air hallway or gallery on

the fourth floor pursued by Spraggins and another man. The witnesses testified that they were familiar with both the victim and Spraggins because they had known them since attending the same grammar school. The witnesses testified that Spraggins and the other man fired numerous shots at the victim as the witnesses fled down a nearby stairwell. When they reached the ground floor the witnesses separated. None of the eyewitnesses contacted the police.

At trial, Priest Pryor and Hunter, members of the same gang as Jones, testified that Spraggins attempted to silence them the day after the murder. According to the witnesses' trial testimony, Spraggins confronted them and shot himself in the leg when attempting to remove a handgun from the waistband of his pants. However, at trial, Spraggins claimed that it was, in fact, Hunter who had shot him. At trial, the State argued that Spraggins confronted Priest Pryor and Hunter to silence them as witnesses to Jones' murder and, when Spraggins was unsuccessful, he decided to falsely accuse Hunter of shooting him.

Spraggins, on the other hand, argued that it was Hunter who shot him and falsely accused Spraggins of shooting Jones to avoid prosecution for shooting him. At trial, the State supported its theory of the case with the testimony of Dr. Timothy Sanders, the emergency room doctor who treated Spraggins' gunshot wound. Dr. Sander's testified that the angle of the gunshot wounds suggested that Spraggins shot himself.

Spraggins was convicted of first degree murder and sentenced to thirty-five years in prison. Spraggins appealed his conviction and sentence to the Illinois Appellate Court. The Appellate Court affirmed his conviction and sentence on February 21, 1995. The Illinois Supreme Court denied his petition for leave to appeal on December 6, 1995.

*B.	Post-Conviction Hearing*

On April 12, 1996, Spraggins filed a post-conviction petition based on ineffective assistance of counsel, perjured testimony and newly discovered evidence, among other issues. The post-conviction petition remained pending for reasons unknown until the court ruled in 2002. The post-conviction court dismissed the ineffective assistance claim and the newly discovered evidence claim without an evidentiary hearing. As to the claim relating to the alleged perjured testimony, the post-conviction court granted an evidentiary hearing.

At the hearing, Eugenia Pryor testified pursuant to a subpoena. Eugenia answered several preliminary questions, but invoked her privilege against self incrimination when asked whether she testified truthfully at the trial. The post-conviction court held that the question clearly would expose Eugenia to charges of perjury and that she was entitled to invoke the privilege. The post-conviction court denied Spraggins's request to admit a videotaped statement Eugenia gave to a public defender's office investigator recanting her trial testimony.

Kenneth Hunter testified at the hearing and stated that he was the same person who testified at Spraggins's trial. Hunter testified that he was lying when he testified that he saw Spraggins shoot Jones and that he was not present on the fourth floor of the 5041 building at the time of the shooting. Hunter testified that the morning after the shooting he was standing under the 5041 building with a group of people discussing Jones' death and that some people reported that a rival gang was responsible for the shooting. Hunter testified that he saw Spraggins walking past the building and fired a shot in retaliation. Hunter then testified that the next day he was arrested for shooting Spraggins and was taken to the police station and placed in a holding area. Hunter stated he used a payphone to call Priest and Eugenia Pryor. Hunter claimed that Priest's

girlfriend answered the telephone and Hunter asked to speak to Priest Pryor. Hunter testified that he concocted a story about Spraggins shooting Jones and that he asked Priest and Eugenia to lie for him and tell the same story.

On cross-examination, Hunter testified that he spoke to Priest for about 10 minutes and then spoke to Eugenia for about 10 minutes. Hunter testified that he did not know how many shooters were involved or where Jones had come from prior to being shot. Hunter further testified that he spoke with Priest and Eugenia Pryor after detectives brought them to the police station. Hunter testified that he could not recall when this conversation occurred in relation to conversations he had with police detectives and assistant State's Attorneys. Hunter testified that after Priest and Eugenia Pryor arrived, the detectives placed them together in a room.

At the post-conviction hearing, Priest Pryor testified that he was at home when Jones was shot, and he did not see the shooting. Priest testified that Hunter made a collect call to Priest's apartment, and he answered the telephone and in that conversation, Hunter asked Priest to lie for him and to tell the police that Spraggins shot Jones and later shot himself. Priest testified that his testimony at Spraggins's trial was false.

On cross-examination, Priest testified that he could not remember whether Hunter told him what he had been charged with. Priest also admitted that he could not remember what Hunter said during the telephone conversation. Priest testified that, when he finished his telephone conversation with Hunter, FBI agents were waiting at his apartment to talk to him. Priest testified that his girlfriend let the FBI agents into the apartment while he was on the telephone in the bedroom. Priest testified that Hunter had asked him to tell the FBI agents that

4

Hunter was with Priest when Spraggins was shot and that was the story he told the FBI agents before they left his apartment.

Priest testified that the FBI returned to his apartment more than four times, but that on some occasions he saw them coming and was able to avoid them. Priest testified that he spoke to Chicago police detectives about Spraggins' shooting. Priest could not remember when he spoke to the police but testified it was a couple of days after he received a telephone call from Hunter. Priest could not remember whether Eugenia was at the police station when he spoke to the detectives, but testified that Hunter was not. Priest further testified that he received several more collect calls from Hunter over a period of several days. Priest testified that he did not speak with Hunter about Jones' shooting during the first conversation.

After listening to the testimony and reviewing the evidence, the post-conviction court denied Spraggins' petition for post-conviction relief on April 16, 2003. The post-conviction court concluded that Spraggins did not allege, and the evidence did not suggest, that the State knowingly introduced perjured testimony at the trial. The post-conviction court further concluded that the recanted testimony given by Hunter and Priest Pryor was inconsistent, incredible and totally unreliable. Specifically, the court found that, because the recanted testimony was incredible and unreliable, Spraggins failed to clearly or convincingly establish that his conviction was based on perjured testimony or that the introduction of this evidence would probably change the result on re-trial. The post-conviction court also found that the issue of whether Spraggins shot himself in the leg was collateral to whether he murdered Jones and had little bearing on his guilt or innocence regarding the underlying crime.

The Illinois Appellate Court affirmed the post-conviction court's decision denying Spraggins' petition for relief on August 25, 2005. The Illinois Supreme Court denied Spraggins' petition for leave to appeal on December 1, 2005. On December 1, 2006, Spraggins filed a pro se petition for writ of habeas corpus on the basis of ineffective assistance of counsel, use of perjured testimony in the original trial and procedural due process violations.

## DISCUSSION

The scope of federal review of state court judgments under the Antiterrorism and Effective Death Penalty Act ("AEDPA") is narrow. In passing the AEDPA, Congress "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693 (2002). The highly deferential standard imposed by section 2254(d)(1) "demands that state court decisions be given the benefit of the doubt" and requires that district courts, to the greatest extent possible, respect the legal and factual dispositions made by the Illinois courts, even if the court may disagree with the state court's disposition. *Woodford v. Visciotti,* 537 U.S. 19, 24 (2002). Simple disagreement with a state court decision and the subsequent grant of habeas relief based on that disagreement improperly "exceed[s] the limits imposed on federal habeas review." *Id.* at 20.

Federal district courts may grant habeas relief when a state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . ." 28 U.S.C. § 2254(d)(1). A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law; [or] if the state court confronts facts that are

6

materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the United States Supreme Court]." *Williams v. Taylor,* 529 U.S. 362, 405 (2000); *see also Harding v. Sternes,* 380 F.3d 1034, 1042-1043 (7th Cir. 2004).

With respect to the unreasonable application prong, the Supreme Court has prescribed the following objective test: "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams,* 529 U.S. at 408. The Supreme Court has cautioned that "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. The federal habeas scheme "leaves primary responsibility to the state courts for these judgments, and authorizes federal-court intervention only when a state-court decision is objectively unreasonable." *Visciotti,* 537 U.S. at 27.

Findings of fact made by the state courts are entitled to deference on federal habeas review. *Suniner v. Mata,* 455 U.S. 591, 598 (1982). Indeed, a state court factual finding is "presumed to be correct," and a petitioner bears the burden of rebutting this presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Additionally, section 2254(e)(1) does not require such findings to be based on evidentiary hearings. *Mendiola v. Schonzig,* 224 F.3d 589, 592-93 (7th Cir. 2000). If the state court's finding is supported by the record, rather than on a federal "hearing on the merits of [the] factual issue," then it is presumed to be correct. *Id.*

7

At the heart of our review of this habeas petition is the deference this court must give to factual findings and credibility determinations made by the post-conviction court when denying Spraggins' post-conviction petition. The post-conviction court granted Spraggins an evidentiary hearing on the issue the alleged perjured testimony offered at his trial. After listening to testimony and weighing the evidence, the post-conviction court concluded that the recanted testimony given by Priest Pryor and Hunter was inconsistent, incredible and totally unreliable. Based on the testimony given and the evidence presented at the hearing, the post-conviction court also concluded that the issue of whether Spraggins shot himself in the leg was collateral to whether he murdered Jones and had little bearing on his guilt or innocence regarding the underlying crime. These factual determinations are entitled to great deference, and it is in the context of these findings that we consider the arguments raised by Spraggins in his habeas petition.

Specifically, Spraggins claims that his counsel rendered ineffective assistance by failing to: (1) interview any of the three eyewitnesses (the Pryors and Hunter) to the shooting despite evidence shown at the post-conviction hearing that all three lied; (2) interview the emergency room doctor; and (3) object to improper testimony by a police officer who offered unfounded forensic testimony. Spraggins also claims that the post-conviction court unfairly denied him due process at the evidentiary hearing in refusing to allow him to subpoena Dr. Sanders to testify at the post-conviction hearing. The court finds each of these arguments without merit.

The standard for reviewing an assertion of ineffective assistance of counsel is set forth in *Strickland v. Washington,* 466. U.S. 678 (1984). On post-conviction appeal, the Illinois Appellate Court examined Spraggins' ineffective assistance claims, cited the *Strickland*

standard, and found his claims without merit. When the state court properly identifies *Strickland* as the governing Supreme Court precedent, a habeas court evaluates only whether the state court applied *Strickland* unreasonably. *Eckstein v. Kingston,* 460 F.3d 844, 849 (7th Cir. 2006). Under *Strickland*, a petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the petitioner. 466 U.S. at 687.

Here, the opinion of the Illinois Appellate Court was not contrary to, nor an unreasonable application of, the *Strickland* standard. Nor did the Appellate Court's decision rely on an unreasonable determination of the facts in light of the evidence presented at the post-conviction hearing. Specifically, the Appellate Court concluded that, because counsel's strategy at the post-conviction hearing was to attack aggressively the evidence supporting the State's theory that Spraggins shot himself in the leg during the encounter with Hunter, Spraggins had to overcome the strong presumption that counsel's actions were the product of sound trial strategy and not incompetence.

The Appellate Court did not find any *Strickland* violation. The Appellate Court agreed with the post-conviction court's ruling that Spraggins' shooting himself in the leg clearly was not an element of the underlying offense, and in fact, was collateral to the issue of his guilt. While noting that Spraggins' injury might have been significant in the context of the post-conviction proceedings because it tended to corroborate the recantation testimony provided by the Pryors and Hunter, the Appellate Court nonetheless held that counsel was not ineffective simply because new evidence developed after trial suggested that a different strategy existed for challenging the State's case.

The Appellate Court further observed that Spraggins made no effort to explain why his non-trial strategy assertions of ineffective assistance could not have been made on direct appeal, and thus should not have been barred from consideration by the doctrine of res judicata. The Appellate Court also concluded that the post-conviction court acted properly in dismissing Spraggins' ineffective assistance claim without an evidentiary hearing. There is nothing to suggest that the Illinois Appellate Court's decision was contrary to, or an unreasonable application of *Strickland,* and Spraggins cannot establish any prejudice with regard to this ineffective assistance claim.

Spraggins next claims that trial counsel was ineffective for failing to interview any of the three eyewitnesses (Eugenia and Priest Pryor and Kenneth Hunter) despite the recantations of their trial testimony. The Appellate Court did not review this specific *Strickland* claim, thus section 2254 does not apply, and the claim must be reviewed de novo. *See Moore v. Parke,* 148 F.3d 705, 708, (7th Cir. 1998); *Tayborn v. Scott,* 251 F.3d 1125, 1130, n. 4 (7th Cir. 2001). Under de novo review, a state court's factual findings are presumed correct, and the petitioner has the burden of rebutting them with clear and convincing evidence. *Tayborn,* 251 F.3d at 1130, n. 4 (citing 28 U.S.C. §2254(e)(1)). Spraggins cannot satisfy this standard.

The original trial testimony of the three eyewitnesses was consistent and corroborated. All testified that, at approximately 2:30 a.m. on March 21, 1991, they were at 5041 South Federal Street standing in the fourth floor hallway. All three testified that they saw the victim, Kevin Jones, emerge from a stairwell as he was chased by Spraggins and a second man. All three testified that the men chasing Jones were armed. All three testified that they saw Spraggins shoot Jones. Moreover, Eugenia Pryor testified that not only did she see Spraggins shoot Jones, but the

area where she was standing at the time was well-lit, her view was unobstructed, and she had known Spraggins since grammar school. Priest Pryor testified that the area where he stood was well-lit, and he had also known Spraggins since grammar school. Hunter testified that because there were lights in the hallway, he got a good look at Spraggins and was able to see his face. In addition, Eugenia and Priest Pryor testified that the victim was shot near apartment 408, a fact confirmed by the responding police officer. Finally, all three testified that there were two shooters, which was confirmed by the State's firearm expert, who testified that the victim was shot by two different guns.

While Spraggins alleges that, because all three witnesses recanted their trial testimony at the post-conviction hearing, counsel should have interviewed the witnesses, he does not address the close corroboration of the witnesses trial testimony in his petition or their agreement that Spraggins shot Jones. In light of the consistency in the witnesses' trial testimony, the evidence presented and the post-conviction court's rejection of the recanted testimony, Spraggins never explains how the failure to interview the witnesses prior to trial prejudiced him. Spraggins, however, claims that the witnesses' subsequent recantation proves that counsel should have interviewed them before trial.

As the post-conviction court recognized and the Illinois Appellate Court affirmed, recantations are inherently unreliable indicators of the truth. *See also United States v. Kamel,* 965 F.2d 484, 494, n.25 (7th Cir. 1992)*; Dobbert v. Wainwright,* 468 U.S. 1231, 1233-34 (1984) (Brennan, J., dissenting from denial of certiorari) ("Recantation testimony is properly viewed with great suspicion. It upsets society's interest in the finality of convictions, is very often unreliable and given for suspect motives, and most often serves merely to impeach cumulative

evidence rather than to undermine confidence in the accuracy of the conviction."). There is nothing in the habeas petition to support a claim that trial counsel was ineffective for failing to interview the three witnesses before trial.

Spraggins also claims that counsel was ineffective for failing to interview Dr. Sanders, the emergency room doctor who treated Spraggins. Specifically, Spraggins claims that Dr. Sanders' testimony regarding his alleged self-inflicted gunshot wound was the only potentially incriminating evidence other than the alleged eyewitnesses' testimony. Dr. Sanders testified that the wound was self-inflicted. Therefore, counsel's failure to impeach him meant that counsel could not bring out the fact that there was nothing in the record showing that the wound was self-inflicted.

In assessing Spraggins' claim about counsel's ineffectiveness with regard to Dr. Sanders' testimony, the Appellate Court noted that Dr. Sanders' testimony was centered around his treatment of Spraggins' leg wound, something that is not an element of the offense with which Spraggins was charged. The Appellate Court agreed with the post-conviction court that the issue of Spraggins' leg wound was collateral to the question of his guilt. Based on this assessment, the Appellate Court concluded that Spraggins was not prejudiced by his counsel's failure to interview Dr. Sanders. This finding is reasonable and not contrary to *Strickland*. The Appellate Court concluded that the failure to interview or impeach Sanders on collateral points would not have changed the outcome of the trial. Because he cannot show any prejudice regarding Dr. Sanders' testimony, Spraggins is not entitled to habeas relief.

Spraggins's third ineffective assistance of counsel claim is based on his assertion that counsel was ineffective for failing to object to the testimony of Detective Tom Kelly, who

12

testified to allegedly unfounded forensic opinions, namely, that the bullet hole in Spraggins' pants was not an entrance hole, thereby insinuating that Spraggins shot himself. Because the Appellate Court did not specifically review this claim, this court must review it de novo.

Similar to the claim regarding Dr. Sanders as discussed above, this claim is collateral to the question of Spraggins' guilt or innocence as to the charged crime. How Spraggins received his leg wound offers no reason to overcome the exacting testimony of three eyewitnesses who identified him as the shooter. Moreover, Officer Kelly never actually offered any forensic testimony at trial. Rather, he only testified about what he saw during his investigation. This is not improper. Even if counsel successfully had objected to this testimony, it is not reasonable to conclude that Spraggins would have been acquitted. Therefore, Spraggins is not entitled to any relief on this claim.

Finally, Spraggins alleges that the post-conviction trial court denied him procedural due process when it refused to allow him to subpoena Dr. Sanders to question him about his trial testimony in light of the alleged new evidence that Spraggins was presenting at the hearing to rebut Dr. Sanders' conclusions. This claim is without merit. Contrary to Spraggins's assertions, the Appellate Court's decision did not unreasonably apply clearly established federal law.

The post-conviction trial court concluded that Spraggins had no right to recall a trial witness when new evidence or a revised trial strategy suggested that a different tactic might have worked better on cross-examination. In essence, Dr. Sanders would not have been called to offer new testimony, but only to comment on how the "new" evidence would have affected his previous opinion.

The Appellate Court held that the post-conviction court did not err in quashing the subpoena. This decision was entirely reasonable. A habeas petitioner is not given carte blanche on post-conviction to re-argue evidence from his trial. *See People v. Rissley*, 795 N.E.2d 174, 179 (Ill. 2003); *People v. Lucas*, 787 N.E.2d 113, 118 (Ill. 2002). The evidentiary hearing on the post-conviction petition was ordered solely on the issue of the alleged perjured testimony of the three eyewitnesses. Whether Dr. Sanders might have reconsidered his trial testimony in light of Spraggins' claimed new evidence is irrelevant.

Spraggins does not cite any case law in support of this claim. Nor does he make any effort to rebut the Appellate Court's finding that his claim was inappropriate in a collateral proceeding. Spraggins was given an evidentiary hearing solely on the issue of perjured testimony, and the post-conviction court found, and the Illinois Appellate Court agreed, the testimony at the post-conviction hearing of Priest Pryor and Hunter to be unbelievable and totally unreliable. As noted by the state courts, Dr. Sanders' trial testimony about Spraggins' gunshot wound was entirely collateral to the issue his guilt of the underlying crime. Accordingly, Spraggins is not entitled to habeas relief.

**CONCLUSION**

For all of the reasons set forth in the court's Memorandum Opinion and Order, Myron Spraggins' petition for writ of habeas corpus is denied. This is a final and appealable order.

_____
Wayne R. Andersen
District Judge

Dated: July 31, 2008